# United States Court of Appeals
## For the First Circuit

No. 00-2184

HELGA E. VALENTIN, A/K/A HELGA E. VALENTIN DE JESUS,

Plaintiff, Appellant,

v.

HOSPITAL BELLA VISTA ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Selya, Lynch and Lipez,

Circuit Judges.

Teresa M. García Moll and Moreda & Moreda on brief for appellant.
Carlos Martínez-Texidor and Martínez-Texidor & Fuster on brief for appellees.

June 27, 2001

**SELYA, Circuit Judge.** Plaintiff-appellant Helga Valentín, also known as Helga Valentín de Jesús, invites us to reverse an order of the district court dismissing her medical malpractice suit for lack of subject-matter jurisdiction. Bound by a relatively restrictive standard of review, we decline her invitation.

On December 10, 1998, Valentín sued a cadre of defendants — divers hospitals, physicians, insurers, and a health services plan — in the United States District Court for the District of Puerto Rico. Claiming that she was a citizen of Florida whereas all the defendants were citizens of Puerto Rico, the plaintiff premised federal jurisdiction on diversity of citizenship and the existence of a controversy in the requisite amount.[1]  See 28 U.S.C. § 1332(a).  Because it is Valentín's citizenship that is at issue here, we make no attempt to enumerate, or to differentiate among, the various defendants.

---

[1]We note that Valentín's complaint specified residency, not citizenship, in respect to the individuals named as parties. Jurisdictionally speaking, residency and citizenship are not interchangeable, Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991)(per curiam), and a complaint that seeks to assert diversity jurisdiction based only on the parties' residences is subject to dismissal.  Acting pragmatically, the district court assumed that the plaintiff meant citizenship when she said residency, and grappled with the merits of the jurisdictional dispute.  We emulate this example.

For federal jurisdictional purposes, diversity of citizenship must be determined as of the time of suit. <u>Bank One</u> v. <u>Montle</u>, 964 F.2d 48, 49 (1st Cir. 1992). Thus, the critical date here was December 10, 1998, and the plaintiff's jurisdictional assertion hinged upon her contention that she was a citizen of Florida at that time. The defendants scoffed at this contention and, after conducting some preliminary discovery, moved to dismiss for want of subject-matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1). They took the position that the plaintiff's true home was in Puerto Rico.

According to her own account, derived from her deposition testimony, the plaintiff was born in Mayagüez, Puerto Rico, in 1968. Her family subsequently moved to Yauco. She lived there with her mother and studied nursing at a local university. When she completed her studies, she returned to Mayagüez and began working at the Mayagüez Medical Center (MMC) in late 1992.

At some point, the plaintiff's sister married and moved to Florida. After toiling at MMC for over five years, the plaintiff, using her accrued vacation time, spent a month visiting her sister and brother-in-law. During that visit, she experienced acute abdominal pain. Doctors in Florida informed her that she needed extensive tests and, quite likely, surgery.

-4-

Cognizant of the requirements of her health insurance plan, she returned to Puerto Rico for follow-up care. Surgery proved necessary during the winter of 1997-1998. When performed, it went poorly.

The ensuing complications prompted the plaintiff to repair to Florida in April of 1998, seeking more sophisticated medical care. Her sister and brother-in-law again provided her with a place to live. When she left for Florida, however, she did not terminate her employment with MMC. To the contrary, her co-workers pooled their accumulated sick leave (totaling eighty-four days) and donated it to her so that she could pursue treatment alternatives without losing her job.

Even after the plaintiff had exhausted all available sick leave, she did not resign. Instead, she requested that MMC grant her an indefinite period of unpaid leave. MMC acquiesced. Although the plaintiff never returned to work at MMC, she did not sever that tie until March of 1999 — some three months after she filed the instant action.

These facts led the parties to opposite conclusions about the plaintiff's citizenship. On January 24, 2000, the most aggressive of the defendants, United Healthcare Plans of Puerto Rico (UHP), filed a motion to dismiss under Rule 12(b)(1), in which it asserted an absence of diversity

jurisdiction.  Several other defendants filed motions joining and/or adopting this motion.  The plaintiff opposed these initiatives, maintaining that she had become a citizen of Florida (and, therefore, that jurisdiction was properly laid in the federal court).  In an effort to streamline the proceedings, the district court gave the remaining defendants until March 17 to stake out their positions vis-á-vis jurisdiction and scheduled an evidentiary hearing for May 6.[2]

One additional defendant responded to the court's invitation and filed a motion to dismiss within the specified interval.  As the date set for the evidentiary hearing approached, the plaintiff, by motion filed on May 1, 2000, asked the court to  "suspend" that hearing and determine the existence vel non of jurisdiction on the parties' written submissions.  The court, apparently yielding to this entreaty, proceeded to decide the jurisdictional issue on the papers.

In a carefully considered ten-page opinion, the court determined that the plaintiff went to Florida in mid-1998 with

---

[2]The court apparently set the hearing date so far in the future because the main protagonists to that point — the plaintiff and UHP — had filed a joint motion for voluntary dismissal (without prejudice).  In order to effectuate that agreement and drop UHP from the case, the movants needed permission from the other defendants, see Fed. R. Civ. P. 41(a)(1), which they had not yet obtained.  This motion eventually became moot when the district court determined that it lacked subject-matter jurisdiction.

the intent of returning to Puerto Rico; that her intent remained unchanged on December 10, 1998; and that, therefore, she was still a citizen of Puerto Rico when she filed suit. Valentín v. UHP, No. 98-2382, slip op. at 10-11 (D.P.R. July 27, 2000) (unpublished). In the court's view, the evidence showed only that the plaintiff "returned to Florida in 1998 to receive medical treatment and that she harbored the intention and desire of living in Florida at some time in the future." Id. at 10. Because even "[a] definite and sincere intention to make a place one's home at some time in the future is not enough to make that place an individual's present domicile," the court found the evidence insufficient to support the plaintiff's claim of Florida citizenship. Id.

The plaintiff's attack on the district court's ruling is vigorous, but largely misdirected. Her principal arguments rest on serial misconceptions of the proper protocol for determining subject-matter jurisdiction and the level of appellate review that applies thereafter. We first expose these misconceptions and then use the correct standards to resolve this appeal.

The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1). This rule is a large umbrella, overspreading a variety of

different types of challenges to subject-matter jurisdiction. Some challenges — those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction are good examples, see, e.g., Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995) (ripeness); D.H.L. Assocs., Inc. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999) (mootness); Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995) (sovereign immunity); BIW Deceived v. Local S6, 132 F.3d 824, 830-31 (1st Cir. 1997) (federal question) — present what amount to pure (or nearly pure) questions of law, and thus engender de novo review. Those types of challenges are beyond the scope of this opinion.

In more prosaic situations, such as when a defendant challenges the existence vel non of diversity jurisdiction, the challenge can be launched in either of two formats. See 2 James Wm. Moore et al., Moore's Federal Practice ¶ 12.30 (3d ed. 1999) (outlining procedures for resolving challenges to subject-matter jurisdiction). We explore that dichotomy.

The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction. Ohio Nat'l Life Ins. Co. v.

-8-

<u>United States</u>, 922 F.2d 320, 325 (6th Cir. 1990); <u>Menchaca</u> v. <u>Chrysler Credit Corp.</u>, 613 F.2d 507, 511 (5th Cir. 1980). In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly. <u>See</u> <u>Herbert</u> v. <u>Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992); <u>Lawrence</u> v. <u>Dunbar</u>, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (per curiam); <u>see</u> <u>also</u> <u>Barrett</u> v. <u>Lombardi</u>, 239 F.3d 23, 30-31 (1st Cir. 2001) (assuming truth of uncontested facts set forth in plaintiff's explanatory affidavit). For ease in classification, we shall call this type of challenge a "sufficiency challenge."

The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1) — which we shall call a "factual challenge" — permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional

-9-

averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. See Garcia v. Copenhaver, Bell & Assocs., 104 F.3d 1256, 1261 (11th Cir. 1997). In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.[3] See Lawrence, 919 F.2d at 1529; Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987).

The rationale for this praxis is obvious. A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function. Thus, when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter

---

[3]We note that there is an exception to this praxis for cases in which the jurisdictional facts, though genuinely disputed, are inextricably intertwined with the merits of the case. In that event, the court may defer resolution of the jurisdictional issue until the time of trial. See Bell v. United States, 127 F.3d 1226, 1228 (10th Cir. 1997); cf. Foster-Miller, Inc. v. Babcock & Wilcox, 46 F.3d 138, 146-47 (1st Cir. 1995) (discussing analogous problem in context of personal jurisdiction). Here, however, the only jurisdictional fact at issue is the plaintiff's citizenship — a fact utterly irrelevant to the substance of her malpractice claim. Hence, the exception does not apply.

jurisdiction has attached. See Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981).

The relevance of this dichotomy is readily apparent here. The motions to dismiss in this case plainly constitute factual challenges: they place in issue the accuracy, as opposed to the sufficiency, of the plaintiff's jurisdictional allegation. The plaintiff blinks this reality, arguing that the district court should have viewed the facts in the light most favorable to her position and, in a misguided effort to reinforce that point, repeatedly characterizes the court's order as a grant of summary judgment. E.g., Appellant's Br. at 1, 16-18, 25.

We flatly reject this revisionism. As said, the motions before the district court were factual challenges under Rule 12(b)(1). It is pellucid that a trial court's approach to a Rule 12(b)(1) motion which asserts a factual challenge is quite different from its approach to a motion for summary judgment. See Ohio Nat'l Life, 922 F.2d at 324-25; see also Kamen v. AT&T Co., 791 F.2d 1006, 1011 (2d Cir. 1986) (explaining that a district court cannot convert a factual challenge under Rule 12(b)(1) into a summary judgment motion). The plaintiff, therefore, is fishing in an empty stream when she attempts to discredit the lower court's decision by adverting to

a wholly inapplicable standard used for adjudicating summary judgment motions (under which the existence of a genuine issue of material fact ordinarily defeats the motion).

The rule of decision applicable to factual challenges under Rule 12(b)(1) is unaffected by the district court's cancellation of the scheduled evidentiary hearing and its subsequent adjudication of the jurisdictional issue on the papers.  A court sometimes may decide factual challenges under Rule 12(b)(1) without convening an evidentiary hearing.  E.g., Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).  The key considerations are whether the parties have had a full and fair opportunity to present relevant facts and arguments, and whether either party seasonably requested an evidentiary hearing.  Cf. Auode v. Mobil Oil Corp., 892 F.2d 1115, 1120 (1st Cir. 1989) (upholding dismissal of suit without evidentiary hearing because, inter alia, motions to dismiss generally do not necessitate evidentiary hearings, and in all events, the appellant had not requested such a hearing).

Where, as here, the parties were afforded ample time to take depositions, compile written submissions, and prepare briefs, they had a sufficient opportunity to be heard.  See generally Fed. R. Civ. P. 43(e) (authorizing federal district courts to "hear" motions and determine ancillary facts on

affidavits or depositions). This opportunity, coupled with the fact that the plaintiff herself exhorted the district court to abandon its plan to hold an evidentiary hearing, sounds the death knell for the plaintiff's argument. Under the circumstances, we think that the plaintiff is estopped from asserting before us that the district court blundered in failing to convene an evidentiary hearing. After all, a party who requests a court to take a specific course of action ordinarily cannot be heard to complain when the court obliges. E.g., John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001); United States v. Coady, 809 F.2d 119, 121 (1st Cir. 1987). We conclude, therefore, that the court correctly proceeded to find the facts without holding an evidentiary hearing.

The plaintiff's second misconception relates to the applicable standard of appellate review. That standard, too, depends on whether a challenge is addressed to the sufficiency of the facts upon which the plaintiff's jurisdictional averments rest or the accuracy of those facts. See Thompson v. Franklin, 15 F.3d 245, 249 (2d Cir. 1994). As noted, the district court disposes of a Rule 12(b)(1) sufficiency challenge on the basis of the plaintiff's version of the relevant events, taking the well-pleaded facts as true and drawing all reasonable inferences in favor of the pleader. Because the facts are not in issue,

the court's determination engenders de novo review. See Spielman v. Genzyme Corp., ___ F.3d ___, ___ (1st Cir. 2001) [No. 00-1775, slip op. at 7]; Corrada Betances v. Sea-Land Serv., Inc., 248 F.3d 40, 44 (1st Cir. 2001).

In contrast, a district court faced with a factual challenge under Rule 12(b)(1) ordinarily must resolve disputed facts (or, at least, choose among competing inferences from subsidiary facts). On appeal, such findings will be set aside only if clearly erroneous. Herbert, 974 F.2d at 197. Even though the question of domicile — the legal status that lies at the heart of a determination of citizenship — is a mixed question of law and fact, the same deferential standard of review endures. See Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 702 (1st Cir. 1979) (reviewing such a determination for clear error); see also In re Extradition of Howard, 996 F.2d 1320, 1328 (1st Cir. 1993) (noting that appellate courts normally review fact-sensitive "mixed" questions under the clearly erroneous standard).

Of course, once the court has found the facts, its ultimate legal conclusion is subject to de novo review. See generally Ornelas v. United States, 517 U.S. 690, 696-99 (1996) (discussing appropriateness of de novo review in determining whether a set of facts, once established, satisfies a particular

-14-

legal standard).  Thus, in <u>Hogar Agua Y Vida En El Desierto,</u>
<u>Inc.</u> v. <u>Suarez-Medina</u>, 36 F.3d 177, 180-81 (1st Cir. 1994), the
district court held an evidentiary hearing on a Rule 12(b)(1)
motion and found the jurisdictionally-significant facts.  On
appeal, however the facts, as found, were not contested, and
thus, we used a de novo standard of review.  <u>See</u> <u>id.</u> at 181
("Since the only dispute on appeal concerns the legal
sufficiency of undisputed jurisdictional facts, we review the
Rule 12(b)(1) dismissal <u>de</u> <u>novo</u>.").  This aptly illustrates the
shifting standards of review that sometimes operate within the
confines of a single jurisdictional inquiry.

     The proper standard of review in this case is
straightforward.  The lower court addressed a factual challenge
under Rule 12(b)(1) — a challenge that required it to find the
facts, choose among conflicting inferences, and make credibility
judgments.  Accordingly, we must accept the court's findings and
the conclusions drawn therefrom unless the whole of the record
leaves us with "a strong, unyielding belief that a mistake has
been made."  <u>Cumpiano</u> v. <u>Banco Santander</u>, 902 F.2d 148, 152 (1st
Cir. 1990) (explicating nature of "clearly erroneous" standard).
We then must determine whether the facts, <u>as</u> <u>supportably</u> <u>found</u>,

justify the court's ultimate legal conclusion.[4]  As we explain

below, the district court's decision easily survives scrutiny

under these criteria.

In order to sustain diversity jurisdiction in the

circumstances of this case, the plaintiff had to demonstrate,

inter alia, that she was a citizen of Florida.  See 28 U.S.C. §

1332(a)(1); see also Toste Farm Corp. v. Hadbury, Inc., 70 F.3d

640, 642 (1st Cir. 1995) (explaining that the party invoking

diversity jurisdiction bears the burden of demonstrating

complete diversity).  For purposes of diversity jurisdiction,

citizenship usually is equated with domicile.  Rodriguez-Diaz v.

Sierra-Martinez, 853 F.2d 1027, 1029 (1st Cir. 1988).  A

person's domicile is the "place where he has his true, fixed

home and principal establishment, and to which, whenever he is

absent, he has the intention of returning."  Id. (citation and

internal quotation marks omitted).  Domicile requires both

physical presence in a place and the intent to make that place

one's home.  Id.  It follows logically that in order to change

_____

[4]We note that Valentín, despite her obvious unhappiness with
the lower court's decision, makes no developed argument that the
facts as found do not warrant the legal conclusion reached.
That point is, therefore, by the boards.  See United States v.
Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (explaining that issues
adverted to in a perfunctory fashion on appeal, but
unaccompanied by developed argumentation, are deemed abandoned).

domiciles, a person must move to a new state in which she intends to remain indefinitely.  Hawes, 598 F.2d at 701.

In this instance, the court below relied chiefly on the facts catalogued in the plaintiff's deposition to find that she had not become a Florida domiciliary on or before December 10, 1998.  Since a party's former domicile persists until a new one is acquired, id., the district court reasoned that the plaintiff was a citizen of Puerto Rico on the critical date (and that, therefore, complete diversity was absent).  Valentín, slip op. at 10-11.  In reaching this conclusion, the court weighted heavily the undisputed fact that the plaintiff did not quit her job at MMC until some time in 1999.[5]  Id. at 8.  The court also emphasized that the plaintiff left the bulk of her belongings at her residence in Mayagüez when she journeyed to Florida, that she kept a car registered there, and that she maintained a Puerto Rico bank account until some time in 1999.  Id. at 8-9.

The plaintiff complains bitterly that she offered explanations for these facts and asserts that there was other

---

[5]Although the plaintiff asserted that she withheld her resignation because she wanted to retain her medical insurance, the court discounted this explanation. Valentín, slip op. at 8. This credibility call was well within the court's proper province. See, e.g., In re Tully, 818 F.2d 106, 109 (1st Cir. 1987) (discussing trial right to assess credibility when finding facts on a paper record). Moreover, the call was understandable here, since the record contains evidence that the plaintiff's coverage lapsed in November 1998.

-17-

evidence that pointed to the opposite conclusion. That is true as far as it goes — but it does not take the plaintiff very far. The lower court gave meticulous consideration to the plaintiff's explanations, but found them wanting. E.g., supra note 5. The court paid similar heed to the evidence favorable to the plaintiff's position: the plaintiff had obtained a Florida driver's license on May 12, 1998; at about the same time, she had received a charge card from a Florida bank and had applied for a few nursing jobs in Florida (although she was not authorized to practice there); she took the examination for a Florida nursing license sometime in 1998 but failed to pass; and she took Florida's test to become a certified nursing assistant three times — the dates are obscure — until she finally passed that test in late 1999.[6] See id. at 7-8. In the end, however, the court concluded that these contacts revealed no more than a desultory desire to relocate to Florida at some indefinite future time. Id. at 9-10.

From a legal standpoint, we discern no error. An amorphous desire to relocate from one place to another at an

---

[6]The plaintiff also registered to vote in Florida, but could not say, though pressed, whether this occurred before or after December 10, 1998. In all events, she never voted there, and she was registered to vote in Puerto Rico throughout 1998. All in all, this evidence hurts, rather than helps, the plaintiff's cause.

indeterminate future date does not suffice to effect a change of domicile. E.g., Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir. 1972) (per curiam). A party only can have one domicile at a time. Bank One, 964 F.2d at 53. To effectuate a change in that domicile (and, thus, a change in citizenship), the law requires that both residency and the intent to sustain that residency coexist. Hawes, 598 F.2d at 701. It follows inexorably, as night follows day, that "a mere detached, indefinite and ambulatory future intention to possibly or probably effect a change of domicile . . . is of no real significance" in solving the jurisdictional riddle. Hardin v. McAvoy, 216 F.2d 399, 403 (5th Cir. 1954).

From a factual standpoint, the plaintiff's protest is equally unavailing. Under the clearly erroneous standard of review, an appellate court simply cannot supplant the district court's perspective with its own, notwithstanding that the members of the appellate panel, if writing on a pristine page, might have derived a different set of conclusions from the same underlying facts. E.g., Jackson v. United States, 156 F.3d 230, 233-34 (1st Cir. 1998). To the contrary, the case law makes clear that a district court's choice between two plausible, but conflicting, interpretations of a factual scenario cannot amount to clear error. E.g., Sierra Fria Corp. v. Donald J. Evans,

-19-

<u>P.C.</u>, 127 F.3d 175, 182-83 (1st Cir. 1997); <u>United States</u> v. <u>Ruiz</u>, 905 F.2d 499, 508 (1st Cir. 1990).  This principle obtains here:  bearing in mind that the plaintiffs primary purpose in going to Florida in April of 1998 — to secure advanced medical treatment for the complications arising out of her surgery — was fully consistent with transient status as opposed to outright relocation, we cannot say that the district court clearly erred in concluding that the plaintiff had not become a Florida citizen on or before December 10 of that year.

We need go no further.[7] Depending on the listener, the same set of facts often tells many different stories.  To the district court, the facts here signified that the plaintiff, at the time she filed suit, harbored a vaguely defined inclination to move to Florida at some point in the not-too-distant future — but no more.  This was a reasonable, though not inevitable, inference, and we decline to disturb it.  Accordingly, we affirm the district court's decision that it lacked subject-matter jurisdiction.

---

[7]We have been informed that, during the pendency of this appeal, the plaintiff filed a new action in the district court, reasserting the existence of diversity jurisdiction.  Although we recognize that a plaintiff may, under certain circumstances, commence a second action when subsequent developments cure a preexisting jurisdictional defect, <u>e.g.</u>, <u>GAF Corp.</u> v. <u>United States</u>, 818 F.2d 901, 913-14 (D.C. Cir. 1987), we take no view as to either the legitimacy of Valentín's new action or the merits of her restated jurisdictional averments.

**Affirmed.**