**P.L. SERVICES LP, d/b/a Resource Funding Group, Plaintiff,**

v.

**MILLENNIUM CONSTRUCTION, INC., et al., Defendants.**

**No. CIV. 03–2188(JAF).**

United States District Court,
D. Puerto Rico.

Aug. 6, 2004.

Antonio A. Arias–Larcada, Esq., Mauricio O. Muñiz–Luciano, Esq., McConnell Valdes, San Juan, PR, for Plaintiff.

Raul Gonzalez–Toro, Esq., San Juan, PR, for Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiff, P.L. Services LP, d/b/a Resource Funding Group ("Plaintiff RFG"), brings this action alleging breach of contract, collection of monies, fraud, and damages against Popular Staffing Services Corp., International Staffing Services, Inc., International Services Network, Inc., Maintenance Technical Services, Inc., René A. González Varela, a/k/a Tony González, his spouse, and their conjugal partnership, Eva A. González Varela de Buscaglia, her spouse, and their conjugal partnership, Envirotechnical Maintenance Services, Inc. ("EMSI"), Rafael Rodríguez Aquino, a/k/a Rafael de Jesús, his spouse, and their conjugal partnership, and Defendants Millennium Construction, Inc. ("Defendant Millennium"), Fraja, Inc. ("Defendant Fraja"), Eladio López, ("Defendant López"), Francisca Quiñones ("Defendant Quiñones"), their conjugal partnership, Companies A, B, and C, and Insurers X, Y, and Z. *Docket Document Nos. 1, 35.*

Defendants Millennium, Fraja, López, Quiñones, and their conjugal partnership (collectively "Defendants") move to dismiss Plaintiff's complaint or, in the alternative, to stay the proceeding pending arbitration involving the previously-dismissed defendants. *Docket Document Nos. 56, 57, 58.* Plaintiff opposes these motions. *Docket Document No. 63.*

### I.

### *Factual and Procedural Analysis*

We derive the following factual summary from Plaintiff's complaint and amended complaint. *Docket Document Nos. 1, 35.* As we must, we "assume all plaintiffs' allegations are true and make all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins., Co.,* 267 F.3d 30, 36 (1st Cir.2001).

Plaintiff is a limited partnership duly organized under the laws of the State of Delaware. Plaintiff is in the business of financing and providing support services to the staffing industry.

EMSI is a corporation duly organized under the laws of the Commonwealth of Puerto Rico with it principal place of business in Trujillo Alto, Puerto Rico. Rafael de Jesús is the president of EMSI and a resident of Trujillo Alto, Puerto Rico.

Defendants Millennium and Fraja are corporations organized under the laws of the Commonwealth of Puerto Rico, with their principal places of business in Bayamón, Puerto Rico.

Defendant López is a resident of Bayamón, Puerto Rico. He has a controlling

interest in Millennium and Fraja. Defendant Quiñones is Defendant López's wife.

On December 1, 2000, Plaintiff and Popular Staffing Services Corp. ("Popular Staffing") entered into a Resource Funding Group Agreement (the "Agreement") whereby Plaintiff provided financing and bookkeeping services to Popular Staffing in consideration for agreed payments. Pursuant to the Agreement, Popular Staffing assigned and granted to Plaintiff a first priority security interest in all of its accounts receivable arising at any time from the conduct of the business as collateral security for the full payment and performance of all of Popular Staffing's obligations under the Agreement.

Both Popular Staffing and René A. González Varela, a/k/a Tony González, President of Popular Staffing and President and Chief Executive Officer of Maintenance Technical Services, Inc., consented to Plaintiff's signing and filing of all Financing Statements with the Department of State for the Commonwealth of Puerto Rico in order to perfect, continue, protect, and enforce the security interest granted to Plaintiff under the Agreement.

On December 18, 2002, Plaintiff suspended service to Popular Staffing's account and ceased providing funding as a result of material breaches to the Agreement. Pursuant to the Agreement, Popular Staffing and Tony González were barred from taking possession of, receiving, endorsing, or collecting any sum or other consideration in payment of any account receivable or taking any other step or act which might reasonably interfere with or delay customers' payments and Plaintiff's collection of all accounts receivable.

As of December 18, 2002, Defendant Millennium and/or Defendant Fraja were customers of Popular Staffing and owed $887,961.93 for services rendered. On December 16, 2002, Defendants Millennium, Fraja, and López were advised of Plaintiff's security interest over the accounts receivable in the amount of $887,961.93, and payment to Plaintiff was requested within ten days. All of Plaintiff's extrajudicial attempts to collect from Defendants Millennium, Fraja, and López were unsuccessful.

On November 4, 2003, Plaintiff filed the present complaint in federal court. *Docket Document No. 1*. On January 15, 2004, the claims against Popular Staffing Services Corp., International Staffing Services, Inc., International Services Network, Inc., Maintenance Technical Services, Inc., René A. González Varela, a/k/a Tona González, Jane Doe, and their conjugal partnership, Eva A. González Varela de Buscaglia, Richard Roe, and their conjugal partnership, Rafael Rodríguez Aquino, a/k/a Rafael de Jesús, Janet Roe, and their conjugal partnership, were dismissed without prejudice subject to the results of arbitration proceedings. *Docket Document No. 21*. Plaintiff filed an amended complaint on March 9, 2004 asserting causes of action against the remaining defendants, Defendant Millennium, Defendant Fraja, Defendant López, and Defendant Quiñones. *Docket Document No. 35*. Plaintiffs request, inter alia, contract damages, lost revenues, costs, and attorney's fees. *Id.*

Defendants move to dismiss Plaintiff's complaint on the grounds that we lack subject matter jurisdiction due to the arbitrability of the issues averred against, or, in the alternative, that we should stay the proceedings pending the result of the arbitration proceedings entered into by the previously dismissed defendants. *Docket Document Nos. 56, 57, 58*. Plaintiff opposes Defendants' motions. *Docket Document No. 63*.

## II.

### Motion to Dismiss Standard Under Rule 12(b)(1)

■ Under Rule 12(b)(1), a defendant may move to dismiss an action against him for lack of federal subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). Since federal courts are courts of limited jurisdiction, the party asserting jurisdiction has the burden of demonstrating the existence of it. *See Skwira v. United States*, 344 F.3d 64, 71 (1st Cir.2003) (citing *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995)). In assessing a motion to dismiss for lack of subject matter jurisdiction, a district court must accept the plaintiff's version of the relevant facts, and draw all reasonable inferences from such jurisdictionally-significant facts in the plaintiff's favor. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir.2001). In addition, a court may review any evidence, including submitted affidavits and depositions, to resolve factual disputes bearing upon the existence of jurisdiction. *Id.* at 363.

## III.

### Analysis

#### A. Motion to Dismiss

Defendants move to dismiss Plaintiff's claims against them, averring that we lack subject matter jurisdiction. *Docket Document No. 56.* Specifically, Defendants state that they are second tier defendants which have been included in the captioned case only in an attempt to collect moneys from Popular Staffing by enforcing the first-priority-security-interest clause of the Agreement entered into between Plaintiff and Popular Staffing. *Id.* Defendants argue that the first-priority-security interest is collateral security for the full payment and performance of Popular Staffing's obligations under the Agreement and is, therefore, subsidiary and contingent to the obligation of the principal. *Id.* Defendants aver that as such, Plaintiff's attempt to collect from them is subject to the results of the arbitration proceedings which could, in effect, end in a settlement and preclude Plaintiff from foreclosing the collateral security. *Id.* In essence, Defendants argue that Plaintiff's claims against them should be subject to the arbitration clause set forth in the Agreement. *Id.*

Defendants conclude that according to applicable case law, Plaintiff's collection action against them falls within the scope of the Agreement's arbitration clause and thus must be resolved between the parties during the arbitration proceedings. *Id.* Thus, Defendants maintain, because all issues in the present case are arbitrable, the case against them should be dismissed. *Id.*

We find Defendants' argument unavailing. Defendants fail to explain, how, as non-signatories to the contract, they can legally bind Plaintiff to the arbitration clause.

■ It is well-established that federal policy favors arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). However, " 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Navig. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Thus, "a party seeking to substitute an arbitral forum for a judicial forum must show, at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994).

■ The natural upshot of this principle is that courts must be extremely cautious

about forcing arbitration upon parties who are not clearly bound to arbitrate. *Inter-Gen N.V. v. Grina*, 344 F.3d 134, 143 (1st Cir.2003); *McCarthy*, 22 F.3d at 355 ("The federal policy, however, does not extend to situations in which the identity of the parties who have agreed to arbitrate is unclear."); *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir.1990) (holding that "[a]s a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so.").[1]

■ Defendants argue that Plaintiff's collection claim against them falls within the subject matter covered by the Agreement's arbitration clause. *Docket Document No. 56.* Defendants, as non-signatories to the Agreement, fail to establish, however, any basis by which they may drag Plaintiff into the arbitration proceedings. In this way, Defendants have failed to establish the necessary prerequisite to finding that the subject matter of Plaintiff's claim comes within the arbitration clause's scope; that is, Defendants have not established themselves as the appropriate party to enforce the agreement to arbitrate. *See McCarthy*, 22 F.3d at 355 (noting that the breadth of the agreement is secondary to proving the existence of the agreement and identifying the protagonists). Defendants have not shown that they are entitled to invoke the arbitration clause and that Plaintiff is bound to abide by it for its claims against Defendants. *InterGen N.V.*, 344 F.3d at 142.

According to the Agreement, "Agency [Popular Staffing Services, Corp.] hereby assigns and grants to RFG, its successors and assigns, a first priority security interest in all of Agency's accounts receivable arising at any time from the conduct of the Business (the 'Accounts Receivable')." *Docket Document No. 4.* Further, the Agreement provides that "RFG shall have the right, but not the obligation, to contact and deal with Agency's Customers for the collection of Accounts Receivable in such manner as it deems necessary, including without limitation, the right to advise Customers of RFG's interest in and ownership of the Accounts Receivable of Agency and to collect such accounts." *Id.* Finally, the Agreement states that "[a]ny dispute or disagreement between the parties (including any guarantor) arising out of or in relation to this Agreement or the transaction or relationships contemplated hereby shall be settled by arbitration." *Id.*

It is clear from the contract's written terms that Plaintiff was granted a first security interest outright upon which Plaintiff could collect by any means required. *Kmart Corp. v. TJAC (Vega Baja), S.E.*, No. Civ. 00–2155(HL), 2001 WL 34394665, at *3 (D.P.R. Oct. 12, 2001) (discussing that under Article 1233 of the Puerto Rico Civil Code, absent conflict be-

---

1. A number of federal courts " 'have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.' " *InterGen N.V.*, 344 F.3d at 145 (quoting *Thomson–CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir.1995)); *see Restoration Pres. Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54, 62 n. 2 (1st Cir.2003). Defendants make no effort, however, to argue that the limited equitable estoppel of this sort applies to the present case. Moreover, we have no indication that the case at bar demonstrates the degree of interrelatedness between the Agreement and Defendants' obligations toward Plaintiff that would warrant our extension of that doctrine here. *See Thomson–CSF, S.A.*, 64 F.3d at 779; *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 528–29 (5th Cir.2000) (noting that equitable estoppel may be used, in the district court's discretion, where plaintiff's claims were "so intertwined and dependent upon" the agreement that the arbitration clause contained therein should be given effect).

tween the contract terms and the parties' intent, courts must look to the "literal sense of the written word" to determine whether "the terms of a contract are clear and one meaning is evident."). Upon a plain reading of the contract's most relevant terms, as well as upon examination of the contract as a whole, it is clear that Plaintiff's ability to enforce the security interest is in no way contingent upon Plaintiff's unsuccessful collection from Popular Staffing. *Docket Document No. 4; H.B. Zachry Co. v. Abengoa P.R., S.E.,* No. 01–2032(DRD), 2003 WL 23315961, at *3 (D.P.R. Jan. 21, 2003) (stating that a court "shall first look to the plain language of the contracts in order to interpret their meanings." (citing *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077, 1084 (1st Cir.1990))). In addition, Defendants have offered no evidence indicating that Plaintiff's claims against them are intricately intertwined with those against Popular Staffing, so that the results of the arbitration proceedings currently underway would necessarily obviate Plaintiff's collection action against Defendants.

Further, the arbitration clause specifically delineates that it covers disputes as between the signatory parties. *Docket Document No. 4.* Defendants have failed to allege, let alone proffer evidence to show, that Plaintiff and Popular Staffing harbored any intent inconsistent with the contract terms and which might allow for an alternate interpretation, that the arbitration clause applies equally to disputes involving non-signatories. *Docket Document No. 56; Kmart Corp.,* 2001 WL 34394665, at *3.

As such, we refuse to find that Plaintiff's claims against Defendants fall within the scope of the Agreement's arbitration clause. We thereby deny Defendants' motion to dismiss.

### B. *Motion to Stay Proceedings*

 Because we find that Plaintiff's right to exercise the first priority security interest granted under the terms of the Agreement is not contingent upon Plaintiff's inability to first collect from Popular Staffing, we discern no basis for staying the current proceedings. *See Moses H. Cone Mem'l Hosp.,* 460 U.S. at 21 n. 23, 103 S.Ct. 927 (discussing that the decision to stay litigation pending the outcome of arbitration is a matter left to the district court's discretion). Defendants' motion to stay is also denied.

### IV.

#### *Conclusion*

In accordance with the foregoing, we **DENY** Defendants' motions to dismiss or stay the current proceedings pending the outcome of arbitration. *Docket Document Nos. 56, 57, 58.*

**IT IS SO ORDERED.**