UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Daniel Frye; Mary Jean Shiner;
Jeffrey J. Dickinson; National
Federation of the Blind, Inc.;
National Federation of the Blind
of New Hampshire, Inc.; and
Granite State Independent Living,
      Plaintiffs

      v.                                    Case No. 20-cv-751-SM
                                            Opinion No. 2020 DNH 213

William M. Gardner, Secretary
Of State of New Hampshire; and
The New Hampshire Department of State,
      Defendants


**O R D E R**


     Plaintiffs brought this action against the State of New

Hampshire seeking declaratory and injunctive relief under the

Americans with Disabilities Act and the Rehabilitation Act.

Broadly stated, plaintiffs claim New Hampshire's absentee voting

program is not adequately accessible to blind and print-disabled

citizens.  The State asserts that even before plaintiffs' suit,

it was diligently working to address the issues raised in their

complaint.  And, says the State, it has successfully implemented

all the relief that plaintiffs requested in that complaint.

Accordingly, it says there is no longer any justiciable

controversy for the court to resolve and plaintiffs' complaint should be dismissed as moot. Plaintiffs object and have also filed an amended complaint, in which they advance new (but related) claims that they say are not moot. In response, the State has moved to strike plaintiffs' amended complaint, asserting that once the case became moot, subject matter jurisdiction was lost and, consequently, the court lacked the authority to entertain any amendments to plaintiffs' complaint.

For the reasons discussed, the State's motion to dismiss is denied, as is its motion to strike the amended complaint.

## Standard of Review

The State moves to dismiss on grounds that the court lacks subject matter jurisdiction, asserting that all claims advanced in plaintiffs' original complaint are moot. See Fed. R. Civ. P. 12(b)(1). See also Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362 (1st Cir. 2001) ("The proper vehicle for challenging a court's subject-matter jurisdiction is Federal Rule of Civil Procedure 12(b)(1)").

As the Valentin court observed, there are two means by which a defendant may challenge the court's subject matter jurisdiction:

2

The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction. In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly. For ease in classification, we shall call this type of challenge a "sufficiency challenge."

The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position. Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1) — which we shall call a "factual challenge" — permits (indeed, demands) differential factfinding. Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.

Id. at 363 (citations omitted; emphasis supplied). Here, the State invokes the latter of those two avenues, asserting a factual challenge to the ongoing viability of plaintiffs' claims – that is, the State says the facts pled in the complaint have changed, plaintiffs' claims have been resolved, and they are now moot.

3

**Background**

As a result of the global pandemic caused by the SARS-Cov-2 virus, New Hampshire expanded access to its absentee registration and voting process to all voters. But, say plaintiffs, that "absentee voting program (including absentee registration, application for an absentee ballot, and the absentee ballots themselves) is inaccessible to them" because they are blind or have other print disabilities. Complaint (document no. 1) at 2. Plaintiffs allege that:

> New Hampshire's absentee voting program relies on printed forms and ballots that print-disabled voters cannot read or mark independently. New Hampshire does not offer an accessible, electronic means of obtaining voting information and an absentee ballot, much less accessible, electronic absentee ballot marking.
>
> * * *
>
> One barrier to voting for people with disabilities is New Hampshire's reliance on exclusively paper forms and ballots for absentee voting, which prevents people who have print disabilities from casting a private vote.
>
> New Hampshire's absentee ballot system places Plaintiffs in an impossible bind. Plaintiffs must either: a) forfeit their right to vote privately and independently, or b) risk their health and the health of their loved ones by voting in person.

Id. at 3-4.

In anticipation of the September 8, 2020, primary election, plaintiffs brought this action seeking injunctive and declaratory relief.  They advance two nearly identical claims: the first under the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, and the second under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, et seq.  In each, they assert that they are qualified individuals with a disability who are wrongfully being denied both the opportunity to register to vote, as well as the opportunity to vote, that is substantially equal to those of non-disabled individuals.  Plaintiffs seek temporary and permanent injunctive relief "requiring Defendants to remedy their absentee voting program by" modifying the State's absentee voting system in three ways:

(1)  allowing voters who qualify for absentee registration to register through an entirely online process; and

(2)  ensuring that all election-related guidance posted on Defendants' website is accessible; and

(3)  implementing a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections.

See Complaint at para. 136 ("Prayer for Relief").


For its part, the State says it had already been working to make its website and its absentee voting system accessible to

5

blind and print-disabled individuals for many months – beginning well before plaintiffs filed their suit.  A timeline and detailed recounting of the State's efforts are set forth in the affidavit of Deputy Secretary of State David Scanlan (document no. 23-2).  On August 28, 2020, the parties memorialized the State's ongoing efforts, as well as its commitment to providing an absentee voting program that is accessible to individuals with print disabilities, in a "Final Term Sheet" (document no. 29).  Satisfied with the State's progress and its commitment to implement the changes plaintiffs requested, plaintiffs withdrew their request for preliminary injunctive relief.

Under the terms of the Final Term Sheet, the State agreed to modify its absentee voting program in a manner that would make it accessible to individuals who are blind or have print disabilities prior to the September 8, 2020, state primary election.  Id. at 2-4.  On August 20, 2020, the State entered into a contract with a third-party vendor, VotingWorks, to implement an absentee voting system that would be accessible to plaintiffs for that primary election as well as the November 3 general election.  Then, in advance of the September 8 election,

VotingWorks put in place its "Remote Accessible Vote-By-Mail" System ("RAVBM").[1]

The State also asserts that it has made all the requested changes to its voter information website, thereby making it accessible to blind and print-disabled individuals. See Memorandum in Support of Motion to Dismiss (document no. 32-1) at 5 ("[O]ver the course of the roughly seven weeks that followed the filing of this action, the defendants fully addressed all of the accessibility issues raised in the plaintiffs' complaint."). Consequently, says the State, it has not only met all its obligations under the Final Term Sheet, but it has also "addressed all of the accessibility issues raised in the complaint in advance of the September 8, 2020 primary election, and the plaintiffs have thus effectively obtained each of the three categories of relief sought in their complaint." Id. at 8. Those actions, says the State, render plaintiffs' claims moot and mean that this case no longer presents a live, justiciable controversy.

---

[1] In their Final Term Sheet, the parties agreed that an RAVBM system is "a program or system that allows individuals who are blind or have other print disabilities to participate in absentee voting privately and independently without relying on others to assist them and with ease of access similar to the experience of nondisabled voters." Id. at 2.

**Discussion**

I.   <u>Plaintiffs' Arguments in Opposition</u>.

As noted above, plaintiffs seek injunctive relief compelling the State to modify its website and absentee voting system in three ways that: (1) allow voters who qualify for absentee registration to <u>register</u> through an entirely <u>online</u> process; and (2) ensure that all election-related guidance posted on <u>Defendants' website is accessible</u>; and (3) <u>implement</u> a <u>remote accessible vote-by-mail system</u> (RAVBM) for plaintiffs and those similarly situated for all future elections.  Complaint at para. 136 ("Prayer for Relief").


A.   <u>Fairly Reading the Complaint</u>.

In opposition to the State's motion to dismiss, plaintiffs say the State has read their complaint too narrowly and their agreement with the State (as embodied in the "Final Term Sheet") did not resolve all of their claims.  So, for example, plaintiffs say that while it is not a part of their prayer for injunctive or declaratory relief, they do allege in their complaint that "[t]echnology is available and in use across the country that allows voters with disabilities to register to vote and request, receive, fill out, and even <u>return their absentee ballots electronically</u>, id. at para. 77 (emphasis supplied), and that "[a]s of September 2019, nearly half of states allowed

8

electronic return of ballots in at least some circumstances, id. at para. 85 (emphasis supplied). Fairly read as a whole, say plaintiffs, the complaint adequately notified the State that plaintiffs were also seeking the ability to return their completed absentee ballots electronically (something that, for security reasons, among others, the State has not agreed to provide). Thus, say plaintiffs, not all of their claims have been resolved and this remains a live, justiciable controversy.

Plaintiffs are mistaken. Two passing references to available technology that some, but not all, other states employ is hardly sufficient to put the State on notice that plaintiffs were demanding such an accommodation. Indeed, the Final Term Sheet expressly states that the modifications to the State's registration and voting processes would "not include the electronic return of a marked absentee ballot." Final Term Sheet, at para. 8. And, as noted above, the ability to return absentee ballots electronically (rather than through the mail) was not included in plaintiffs' prayer for relief.

B.   Online Voter Registration.

As for their request that the State develop and online electronic voter registration process for voters who are blind or have print disabilities, plaintiffs do not dispute that the

9

State did implement such a system. It was in place for both the primary and the general election. As to that issue, there is no dispute that it has been resolved.

    C.    Accessible Voting Guidance on State's Website.

According to plaintiffs, "Defendants' efforts pursuant to the Term Sheet notwithstanding, they have not successfully made election-related information on their website accessible as Plaintiffs have demanded in this action." Opposition Memorandum (document no. 35-1) at 9. Specifically, plaintiffs say:

> Defendants' website allows voters to find the contact information for their clerk, check their party membership status, and check the status of their absentee ballot requests. Blind voters cannot look up any of this information because they cannot get past these features' security function (known as a CAPTCHA, or Completely Automated Public Turing test to tell Computers and Humans Apart), which requires sight to enter a series of randomly generated characters displayed on the screen. Low-vision voters will find issues with color contrast on these webpages.

Opposition Memorandum at 10 (citing plaintiffs' amended complaint at paras. 105-06). But, as the State notes, those claims were not raised in plaintiffs' original complaint. Indeed, that plaintiffs cite to their amended complaint to support those claims illustrates the State's point: those are new claims. They were not fairly raised in the original

10

complaint, nor did the original complaint give the State adequate notice that plaintiffs were advancing such claims.

    D.   <u>Remote Access Vote-by-Mail System</u>.

Plaintiffs' final request was that the State implement a remote access vote-by-mail system, also known as an RAVBM. There is no dispute that the State implemented such a system and it was operational for both the primary and general elections.

## II.  <u>Mootness and Justiciability</u>.

A case becomes moot and no longer presents a "case" or "controversy" for purposes of Article III when the issues presented by the plaintiff's complaint have been addressed or the underlying dispute has been resolved.  As the Supreme Court has noted:

> A case becomes moot — and therefore no longer a "Case" or "Controversy" for purposes of Article III - when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.  No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.

<u>Already, LLC v. Nike, Inc.</u>, 568 U.S. 85, 91 (2013) (citations and internal punctuation omitted).  Nevertheless, the Court has recognized that:

11

a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued.  Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends.  Given this concern, our cases have explained that a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.

Id. (emphasis supplied).

Having remedied all alleged deficiencies in its website and absentee voting procedures that were identified by plaintiffs, the State urges the court to declare that plaintiffs' claims are moot, strike the amended complaint, and dismiss the case.

The record before the court, as well as the arguments by counsel, reveal that the claims advanced in plaintiffs' original complaint have been resolved and they are now moot.  And, there is no reasons to believe that, having made the substantial investment of time and money to implement those changes, the State will not keep them in place going forward.  See, e.g., Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 56 (1st Cir. 2013) ("Under circuit precedent, the voluntary cessation exception can be triggered only when there is a reasonable expectation that the challenged

12

conduct will be repeated following dismissal of the case.").
See generally LMG R.I. Holdings v. R.I. Sup. Ct., No. 18-cv-297-
SJM-AKJ (R.I.D. Dec. 21, 2018) (noting that once informed of the
law's requirements, state officials can be presumed to act in a
lawful manner and consistent with a court's direction)
(collecting cases).  Consequently, the court concludes that the
State has met its "formidable burden" of demonstrating that the
challenged conduct cannot reasonably be expected to recur.

The only lingering question is whether plaintiffs had the
ability to amend their complaint to advance new, but related,
claims or whether, as the State urges, that amended complaint
must be stricken.

III. Amendment of the Original Complaint.

On September 22, 2020, the State filed its motion to
dismiss plaintiffs' complaint as moot, noting that all alleged
defects identified in plaintiffs' complaint concerning New
Hampshire's voter registration process, its voter information
website, and its absentee voting system had been remedied.  At
that point, says the State, this case no longer presented a
judiciable controversy, plaintiffs' claims were moot, and the
court lacked subject matter jurisdiction.  In response, on
October 6, 2020, plaintiffs filed a timely amended complaint.

See generally Fed. R. Civ. P. 15(a)(1)(B).  In it, plaintiffs expanded upon the relief sought in their original complaint – that is, they included claims focused on the electronic return of completed ballots and other, previously unmentioned, aspects of the State's voter information website.

The State moves the court to strike or otherwise dismiss the amended complaint for lack of subject matter jurisdiction. In short, it says that plaintiffs "cannot avoid mootness by pleading what is effectively an entirely new lawsuit with entirely new claims."  Defendants' Motion to Strike (document no. 38) at para. 8.  "The Amended Complaint purports to amend a pleading over which this Court no longer possesses subject matter jurisdiction."  Id. at para. 13.  Moreover, says the State, "the plaintiffs did not file their Amended Complaint until after the defendants moved to dismiss the original complaint on the basis of mootness.  Thus, even assuming an amendment as of right could cure mootness if filed before mootness was raised - a dubious proposition at best for the reasons already stated - no such circumstances exist in this case."  Id. at para. 14 (emphasis supplied).  In sum, says the State, "once this case became moot, the Court lacked jurisdiction to hear it, and Rule 15 cannot resurrect this action."  Id. at para. 11.  The Court disagrees.

In support of its position, the State points to several cases in which plaintiffs were denied the opportunity to amend their complaints after their claims were mooted.  See Defendants' Motion to Strike at para. 9 (citing Fox v. Bd. Of Trs. of State Univ. of N.Y., 42 F.3d 135 (2d Cir. 1994) and Cicchetti v. Lucey, 514 F.2d 362 (1st Cir. 1975)).  The State also cites to H.B. v. Byram Hills Cent. Sch. Dist., No. 14 CV 6796 VB, 2015 WL 5460023, at *5 (S.D.N.Y. July 20, 2015), for the following proposition:

> When a court lacks subject matter jurisdiction over an action, it cannot grant leave to amend because "by definition . . . it is without power to act."  Fox v. Bd. of Trs. of State Univ. of New York, 148 F.R.D. 474, 487 n.30 (S.D.N.Y. 1993), aff'd 42 F.3d 135 (2d Cir. 1994); accord Pressroom Unions-Printers League Income Sec. Fund v. Cont'l Assur. Co., 700 F.2d 889, 894 (2d Cir. 1983) ("Because [he] was without jurisdiction, the judge appropriately denied the request to amend the complaint.").  Accordingly, because the Court lacks subject matter jurisdiction over this action, plaintiffs' motion for leave to amend the complaint must be denied.").

Id. at *5 (emphasis supplied).  Importantly, however, the cases cited by the State involved situations in which plaintiffs were required to seek and obtain leave of the court to amend; they (unlike plaintiffs in this case ) no longer had the ability to amend their complaint as a matter of right.

15

But, in an effort to diminish the significance of that distinction, the State asserts that "the cases the plaintiffs cite in support of the proposition that an amendment as of right is somehow different are readily distinguishable as they expressly contemplated circumstances in which the 'amended complaint became the operative pleading by operation of law before any jurisdictional challenge was mounted.'" Defendants' Motion to Strike at para. 12 (quoting Connectu LLC v. Zukerberg, 522 F.3d 82, 95 (1st 2008)). The State asserts that because it challenged the court's subject matter jurisdiction over plaintiffs' claims before plaintiffs amended their complaint, the court had already lost subject matter jurisdiction, that amendment was a nullity, and the case must be dismissed.

While the State's argument is facially appealing, it is inconsistent with the provisions of Fed. R. Civ. P. 15 – particularly the 2009 amendments to that rule. The salient portions of Rule 15 provide as follows:

> **Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:
>
> (A)  21 days after serving it, or
>
> (B)  . . . 21 days after service of a motion under Rule 12(b), (e), or (f).

Fed. R. Civ. P. 15(a)(1)(A) and (B) (emphasis supplied).

Plainly, then, Rule 15 allows plaintiffs to amend their

complaints within 21 days after service of, among other things,

a motion to dismiss challenging the court's subject matter

jurisdiction.  See generally, Fed. R. Civ. P. 12(b)(1).  So,

even if a court lacks subject matter jurisdiction over a

plaintiff's original complaint and (as here) the defendant moves

to dismiss the complaint on that ground, the plaintiffs have 21

days within which to amend their complaint to state claims over

which the court does have jurisdiction.  See generally Wagstaffe

Prac. Guide: Fed Civil Proc Before Trial § 2.85 (2020) ("If

timely, a plaintiff can file an amended pleading in response to

a Rule 12(b)(1) motion.").  The lack (or loss) of subject matter

jurisdiction over the original complaint does not necessarily

compel dismissal of that complaint.  Nor does it preclude a

plaintiff from timely amending that complaint – even if that

amendment is made in response to a motion to dismiss for lack of

subject matter jurisdiction.

Dicta in the court of appeals' decision in Connectu, with

its reference to the timing of a defendant's jurisdictional

challenge, predates the 2009 amendments to Rule 15 and,

therefore, does not control this situation.  So, for example,

17

the United States District Court for the Northern District of Florida recognized:

> _Connectu_ is distinguishable . . . because there the court was construing the former Rule 15(a), in which the time for amending as of right terminated upon the filing of a responsive pleading.  Under the current rule, amendment of a complaint is permitted once as of right within 21 days after service of the responsive pleading, so the rule assumes a jurisdictional challenge might be made and subsequently corrected by substituting an amended complaint.  The language of the new rule is plain, and additionally, the notes accompanying the 2009 Amendments plainly state, "the right to amend once as a matter of course is no longer terminated by service of a responsive pleading."

Blue Marine Shipping SA de CV v. Gulmar Offshore Middle E. LLC, No. 309CV555/MCR/MD, 2010 WL 1687737, at *4 n.13 (N.D. Fla. Apr. 26, 2010) (emphasis supplied).

Plaintiffs amended their complaint as a matter of right, pursuant to Rule 15(a).  Consequently, the court's authority to grant or deny a motion for leave to amend was not implicated (as, for example, it would have been had plaintiffs sought to file a "supplemental complaint" pursuant to Rule 15(d)).  And, under Rule 15(a), plaintiffs had the right to amend their complaint even after the State raised its jurisdictional challenge.

But, even if plaintiffs had moved to "supplement" (rather than "amend") their original complaint pursuant to Fed. R. Civ. P. 15(d), this court would retain discretion to allow such an amendment. That is to say, an initial lack of subject matter jurisdiction – particularly in a federal question case, see 28 U.S.C. § 1331 – does not prevent a court from granting leave to a plaintiff seeking to supplement a complaint. The court of appeals recently discussed this topic at length:

> Rule 15(d) prescribes that "[t]he court may permit supplementation even though the original pleading is defective in stating a claim or defense." This sentence was added to the rule in 1963. It was designed to combat "the rigid and formalistic view that where the original complaint fails to state a claim upon which relief can be granted, leave to serve a supplemental complaint must be denied." Fed. R. Civ. P. 15(d) advisory committee's note to 1963 amendment. The new language was designed to ensure that the amended rule would "give the court broad discretion in allowing a supplemental pleading" so that plaintiffs would not be "needlessly remitted to the difficulties of commencing a new action even though events occurring after the commencement of the original action have made clear the right to relief." Id.

> In keeping with this spirit of flexibility, courts generally have read Rule 15(d) to include defects in subject matter jurisdiction among the deficiencies that may be corrected through a supplemental pleading. The Supreme Court has signaled its approval of this praxis. See Mathews v. Diaz, 426 U.S. 67, 75 & n. 8 (1976) . . .. The decision in Mathews plainly implies that subject matter jurisdiction falls within the cluster of defects that may be cured by a supplemental pleading under Rule 15(d).

19

> Our sister circuits have not hesitated to make this implication explicit. . . .
>
> Viewed against this backdrop, we think it manifest that the [plaintiff's] case is well suited to a motion for leave to supplement. Developments occurring after the filing of the second amended complaint . . . have dissolved the jurisdictional bar that the court below found dispositive. . . . Under the circumstances, <u>it would be a pointless formality to let the dismissal of the second amended complaint stand</u> - and doing so would needlessly expose the [plaintiff] to the vagaries of filing a new action. We hold, therefore, that the [plaintiff's] second amended complaint is eligible for the proposed supplementation.

<u>U.S. ex rel. Gadbois v. PharMerica Corp.</u>, 809 F.3d 1, 5-6 (1st Cir. 2015) (emphasis supplied).

So it is in this case (although plaintiffs stand on firmer footing, having amended their complaint as a matter of right). Even if the court had discretion to dismiss the case and deny plaintiffs' the ability to amend, doing so would merely force them to file a new case. Such an outcome would not represent an efficient use of the time or the resources of either the court or the parties. <u>See generally</u> Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

## Conclusion

For the reasons discussed, the State's motion to dismiss (**document no. 32**) and its motion to strike or otherwise dismiss the amended complaint (**document no. 38**) are denied. Plaintiffs' motion to take judicial notice (**document no. 40**) is denied as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 9, 2020

cc:  Abigail Graber, Esq.
     Greg P. Care, Esq.
     James P. Ziegra, Esq.
     Pamela E. Phelan Esq.
     Anthony Galdieri, Esq.
     Samuel R.V. Garland, Esq.
     Seth M. Zoracki, Esq.