ESTATE OF Antonio SERRACANTE, Composed of Renan, Carmen and Guillermo Antonio Serracante, Plaintiff,

v.

ESSO STANDARD OIL (PUERTO RICO), Defendant.

Civil No. 09–1326(DRD).

United States District Court, D. Puerto Rico.

March 17, 2011.

Orlando Cabrera–Rodriguez, Attorney and Counsellor at Law, San Juan, PR, for Plaintiff.

Carla Garcia–Benitez, Christian M. Echavarri–Junco, O'Neill & Borges, John F. Nevares, John F. Nevares & Assoc. PSC, Nashely Pagan–Isona, San Juan, PR, Ty Buthod, Steven Mitby, Baker Botts L.L.P., Scott Janoe, Houston, TX, Pedro Quinones–Suarez, John F. Nevares & Assoc. PSC, Santurce, PR, for Defendant.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

Plaintiffs Renan, Carmen, and Guillermo Antonio Serracante, who jointly comprise the Estate of Antonio Serracante ("Plaintiffs"), filed a citizens suit against Defendant Esso Standard Oil (Puerto Rico) ("Esso" or "Defendant") under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k. A citizen suit authorizes a private person to sue civilly to enforce the RCRA. *Francisco Sanchez v. Esso Standard Oil Co.*, 572 F.3d 1 (1st Cir.2009). Citizen suits "function as a form of statutory enforcement in addition to, or in conjunction with, enforcement by an administrative agency or other governmental entity." *Esso Standard Oil Co. (P.R.) v. Rodríguez–Pérez*, 455 F.3d 1, 5 n. 2 (1st Cir.2006).

On March 31, 2010, this Court granted Defendant's *Motion to Dismiss* plaintiff's original complaint for failure to comply with pleading requirements (Docket No. 46). Plaintiffs rectified these defects with an *Amended Complaint* filed on April 26, 2010 (Docket No. 47).

On May 17, 2010, Esso renewed its *Motion to Dismiss* (Docket No. 49). Therein, Esso argues that this Court lacks subject matter jurisdiction as the RCRA forbids citizen suits where a state or the federal government is prosecuting a suit to compel compliance under the RCRA. Esso notes that the Commonwealth of Puerto Rico has brought its own RCRA enforcement action for gasoline-related contamination from leaking USTs across Puerto Rico, including at the Site. Thus, Esso claims that the Commonwealth's suit, which focus on the leaks involving the gasoline additive methyl tertiary butyl ether (MTBE), completely bars Plaintiff's citizen suit. Esso also asserts that Plaintiffs have failed to allege any activity that would constitute a continuing violation of RCRA, which is a requirement for citizen suits under § 6972(a)(1)(A). Further, Esso alleges that Plaintiffs have failed to sufficiently plead that an imminent and substantial endangerment to health or the environment exists, as required by § 6972(a)(1)(B).

Plaintiffs opposed Defendant's motion on May 27, 2010 (Docket No. 52), asserting that there are continuing violations of the RCRA as the contaminated area has not been properly investigated or cleaned up. Plaintiffs further state that the presence of contaminants possess an imminent and substantial endangerment to human health and the environment. As to the jurisdictional issue, Plaintiffs claim that the Commonwealth of Puerto Rico's MBTE products liability case does not preclude their citizens suit. Plaintiff note that the MTBE is a different compound than BTEX (benzene, toluene, ethylbenzene, and xylene), which is the subject of the present complaint, and therefore could potentially require different remedial measures.

On October 5, 2010, Defendant replied (Docket No. 57), merely reiterating its pre-

vious arguments. On the same day, the Court referred the pending *Motion to Dismiss* to Magistrate Judge Bruce McGiverin for entry of his report and recommendation (Docket No. 56).

On December 30, 2010, Magistrate Judge McGiverin filed his *Report and Recommendation* (Docket No. 59). Therein, he recommended the District Court to deny the *Motion to Dismiss.* Specifically, the Magistrate Judge relied upon First Circuit precedent to find that the Commonwealth's MTBE litigation does not bar the present suit. In *Sanchez v. Esso,* 572 F.3d at 20, the First Circuit concluded that, while MTBE and BTEX are both components of gasoline, areas affected by contamination from each compound would be potentially different and/or require different remedial measures. Additionally, Magistrate Judge McGiverin noted that the Plaintiffs alleged violations of different provisions of the Underground Storage Tanks Regulations ("USTRs") than are implicated in the MTBE litigation, a distinction which the *Sanchez* court found compelling. *Id.* at 12–13. Moreover, the MTBE litigation involves a multitude of defendants for alleged contamination across Puerto Rico while the present case merely involves one defendant for alleged contamination at one site. *Id.* at 13.

Magistrate Judge McGiverin also concluded that the "ongoing violation" requirement was met under § 6972(a)(1)(A). The Magistrate Judge found that Esso's removal of the USTs from the Site in 2003 was inadequate to insulate Esso from § 6972(a)(1)(A). Instead, Magistrate Judge McGiverin noted that our Court, and others, have held that failure to take corrective action constitutes an ongoing violation. Therefore, he determined that Plaintiff's allegation that Esso refused to remediate a contaminated site is sufficient.

Further, Magistrate Judge McGiverin found Esso's objections that an "imminent and substantial endangerment" does not exist under § 6972(a)(2)(A) to be insufficient. The Magistrate Judge observed that the RCRA merely requires a reasonable possibility of harm rather than a certainty of such an occurrence. Plaintiffs allege that the soil and groundwater at the Site have been contaminated since 1990 and that the soil and groundwater contamination is still expanding from the Site; Magistrate Judge McGiverin determined that these assertions, in the aggregate, support this reasonable possibility of harm.

On January 11, 2011, Esso objected to the Magistrate's *Report and Recommendation* (Docket No. 60). As an initial matter, Esso requests that the Court take judicial notice that a chief witness for Plaintiffs in the present case was also a witness in a prior case where the witness was found to be "not qualified as an expert" and, even if he was qualified, "his violent bias, spurious testimony, and impermissible conduct rendered his testimony irrelevant and unreliable." *Sanchez v. Esso Std. Oil Co.,* 2010 WL 500408, at *4, 2010 U.S. Dist. LEXIS 9942, at *14 (D.P.R., Feb. 5, 2010).[1]

---

1. The Court finds that this request is premature and is more properly addressed in a motion in limine and/or in a motion for summary judgment. Although the Court may provide weight and authority to our sister court's opinion, the decision of the district court is not final as the case has been appealed. *See MacKenzie v. Engelhard Co.,* 266 U.S. 131, 142–143, 45 S.Ct. 68, 69 L.Ed. 205 (1924) ("An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of.... When the final judgment was reached it determined the rights of ... [the parties] *ab initio* ...."). Hence, there is no legal impediment at this stage of the case. Accordingly, the Court shall not further address this request at this time.

Esso also states that the Commonwealth of Puerto Rico Underground Storage Tank Regulation Rules provide for finite, time-sensitive deadlines that are single events and thus cannot be construed as continuous violations. Finally, Esso reiterates that Plaintiffs have failed to plead actual or potential exposure to contaminants in amounts sufficient to cause an identifiable harm in order to create an imminent and substantial risk.

On January 18, 2011, Plaintiffs responded to Esso's objections to the Magistrate Judge's *Report and Recommendation* (Docket No. 61). Plaintiffs first point out that *Sanchez v. Esso* is not final because it is currently pending before the First Circuit Court of Appeals as an interlocutory appeal. Plaintiffs also argue that the EQB has not performed any meaningful effort to enforce the UST regulations on the Site, such as initiated an enforcement action against Esso in years. Additionally, Plaintiffs cite case law supporting their contention that a party does not have to exhaust administrative proceedings as a prerequisite to maintaining a citizen suit under the RCRA.

On January 28, 2011, Plaintiffs submitted supplemental authority from a recent First Circuit case, *Chico Serv. Station, Inc. v. Sol P.R. Ltd.*, 633 F.3d 20 (D.P.R.2011)(Docket No. 63). In that case, the First Circuit held that a citizen suit under RCRA is barred where the EQB initiates a court proceeding, known as the diligent prosecution bar; but there is no such hurdle for a mere investigation by the EQB. *Id.* at 26–27.

On February 1, 2011, Esso responded to Plaintiffs' supplemental authority (Docket No. 65). Esso states that *Chico v. Sol P.R.* is inapplicable to the instant case because Esso was not challenging the diligent prosecution bar. Instead, Esso argues that Plaintiffs have not plead that there is an ongoing violation.

## II. REFERRAL TO THE MAGISTRATE JUDGE

The Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See also* FED.R.CIV.P. 72(b); *see also* Local Rule 72(a); *see also Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). An adversely affected party may contest the Magistrate's Report and Recommendation by filing its objections. FED. R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

"Absent objection, . . . [a] district court ha[s] a right to assume that [the affected party] agree[s] to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Additionally, "failure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objections are precluded upon appeal." *Davet v. Maccarone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *see also Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–51 (1st Cir.1994) (holding that objections are required when

challenging findings actually set out in a magistrate's recommendation, as well as the magistrate's failure to make additional findings); *see also Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993)(stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *see also Borden v. Sec. of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987)(holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised").

■ The Court, in order to accept unopposed portions of the Magistrate Judge's Report and Recommendation, needs only satisfy itself that there is no "plain error" on the face of the record. *See Douglass v. United Servs. Auto, Ass'n,* 79 F.3d 1415, 1419 (5th Cir.1996)(*en banc* )(extending the deferential "plain error" standard of review to the un-objected to legal conclusions of a magistrate judge); *see also Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. 1982)(en banc)(appeal from district court's acceptance of un-objected to findings of magistrate judge reviewed for "plain error"); *see also Nogueras–Cartagena v. United States,* 172 F.Supp.2d 296, 305 (D.P.R.2001)(finding that the "Court reviews [unopposed] Magistrate's Report and Recommendation to ascertain whether or not the Magistrate's recommendation was clearly erroneous")(adopting the Advisory Committee note regarding FED. R.CIV.P. 72(b)); *see also Garcia v. I.N.S.,* 733 F.Supp. 1554, 1555 (M.D.Pa.1990) (finding that "when no objections are filed, the district court need only review the record for plain error").

For the reasons set forth below, the Court **ADOPTS IN TOTO** the Magistrate Judge's *Report and Recommendation* and **DENIES** Defendant's motion to dismiss.

## III. RELEVANT FACTUAL BACKGROUND

The factual background is primarily taken from the Magistrate Judge's *Report and Recommendation* and the *Amended Complaint.* Neither party has objected to the Magistrate Judge's recitation of the facts. Nevertheless, the Court reviews the Magistrate Judge's statement of facts for plain error to ascertain if he has indeed included all the facts which are relevant to the instant inquiry. Upon completion of its review, the Court finds that the Magistrate Judge's statement of facts was accurate, through and well-organized and, accordingly, incorporates the statement of facts here by reference *in toto.*

Plaintiffs inherited several tracts of real estate. On one of these parcels of real estate (the "Site"), Esso previously operated gasoline and underground storage tanks ("USTs"), a grease trap, and a hydraulic lift as part of a service station. Esso currently retains operational control over the Site.

In 1990 and 1992, Esso discovered free hydrocarbon product in the soil and groundwater beneath the Site. In March of 2003, the Puerto Rico Environmental Quality Board ("EQB") issued Esso an Underground Storage Tank Regulation Violation Notification and informed Esso of its duty to investigate the presence of free product floating in the groundwater beneath the Site. In June of 2003, Esso conducted a Phase II Investigation of the Site. In July and August of 2003, Esso removed the gasoline and diesel USTs, grease trap and hydraulic lift from the Site.

In February of 2004, the EQB reviewed environmental reports submitted by Esso and determined that the concentrations of Benzene, Toluene and Total Petroleum Hydrocarbons were above permissible limits. The EQB instructed Esso to delineate the vertical and horizontal contamination

plume and to submit a Remediation Plan. In March of 2004, the EQB reviewed additional reports from Esso and again ordered Esso to submit a Remediation Plan. Esso then informed the EQB of its decision to not put forth a Remediation Plan for the Site and instead informed the EQB that Esso was going to prepare and submit a Site Risk Assessment. In June of 2005, the EQB informed Esso that the EQB would not accept a Risk Assessment report instead of the required Remediation Plan. In October of 2006, the EQB received Esso's risk assessment report and again informed Esso that the EQB would not accept a risk assessment report in lieu of a Remediation Plan. EQB denied Esso's request to be excused from the EQB's investigation and remediation requirements.

In March of 2006, the municipality where the Site is located declared the Site a public nuisance.

To date, no vertical and horizontal delineation of the soil and groundwater has been preformed. No remediation of the soil or groundwater has been conducted and therefore soil and groundwater contamination has continued to migrate out of the Site.

## IV. MOTION TO DISMISS

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R.CIV.P. 8(a)(2). Under *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." Thus, a plaintiff must now present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). *Id.* at 570, 127 S.Ct. 1955; *see*

*e.g. Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, and *Iqbal,* 129 S.Ct. 1937. First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action. *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st Cir.2009)(quoting *Iqbal,* 129 S.Ct. 1937)(internal quotation omitted).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Id.* This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.* Thus, "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira–Castillo,* 590 F.3d 31, 41 (1st Cir.2009).

In the instant case, the Court need not examine the merits of the diligent prosecution bar or supplemental jurisdiction. Esso does not object to the Magistrate Judge's finding with respect to supplemental jurisdiction and in Esso's response to Plaintiffs supplemental authority (Docket No. 65), Esso even appears to retreat from this argument when it affirmatively stated that it does not request that the Court apply the diligent prosecution bar. However, acting out of an abundance of caution, and because the Magistrate Judge's

*Report and Recommendation* discusses the issue of supplemental jurisdiction, the Court will review those finding for plain error.

"[A] citizen suit under either 42 U.S.C. § 6972(a)(1)(A) or (a)(1)(B) may be barred if a state or federal agency is diligently prosecuting an enforcement action against the same alleged violator". *Sanchez* 572 F.3d at 10. In *Sanchez*, the First Circuit compared a similar suit where Esso appeared as the defendant to a suit the Commonwealth of Puerto Rico had filed. In 2007, the Commonwealth sued various gasoline refiners and distributors, owners and operators of gasoline retail stations, and manufacturers of MTBE for large-scale MTBE contamination of the "waters of the Commonwealth." *Id.* at 10–11. Esso alleges that this civil suit, in which Esso is a defendant, divests the Court of jurisdiction over Plaintiffs' suit. To decide whether the diligent prosecute bar prohibited Sanchez's suit, the First Circuit has enumerated four criteria: whether (1) the two complaints involve different contaminants; (2) the two complaints allege violations of different regulations; (3) the scope of the alleged contamination; and (4) the degree to which the remedial remedies overlap. *Id.* at 12–14.

Magistrate Judge McGiverin soundly applied the First Circuit's fourfold factor test to the present case and determined that the diligent prosecution bar does not prohibit the Court from applying supplemental jurisdiction. First, the Magistrate Judge accurately determined that the compound in the Commonwealth's litigation, MTBE, is sufficiently different from the present action's compounds, BTEX, in that both compounds potentially cause different environmental degradation when leaked. Secondly, the two suits implicate different provisions of the USTR Rules and Esso is being sued in different capacities. In the Commonwealth's suit, Esso is sued as the "refiner/supplier," while here, Esso is sued as the "owner/operator" of the Site. Next, the scope of the suits is quite different. In the Commonwealth's suit, a myriad of defendants are sued for environmental damage all across Puerto Rico, while in the present suit, one defendant is sued for environmental damage at one specific location. Lastly, the remedies requested may or may not be identical. If they are not identical, then there is no impediment; however, if the remedies are identical, then the suit that is resolved last will taken into account the remedies imposed in the first suit and thereby conserve resources. *Sanchez* 572 F.3d at 13.

Further, upon a careful de novo review, the Court agrees with the Magistrate Judge's determination that Plaintiffs have sufficiently plead an ongoing violation of several USTRs. Esso argues that an ongoing violation cannot occur because it removed the UST from the Site in 2003 and because the specific USTRs Plaintiff cites only require finite reporting obligations. However, Plaintiffs allege that Esso has refused to remediate the contamination and to rectify its environmental impact, thereby creating an ongoing violation. "Courts have found that the failure to take corrective action and to comply with the regulations in connection to a previous spill can constitute a continuous violation under subsection (a)(1)(A)." *Colón–Cabrera v. Esso Std. Oil Co.,* 2011 WL 280921, *4, 2011 U.S. Dist. LEXIS 7245, *10 (1st Cir. January 26, 2011)(citing *Marrero Hernandez v. Esso Standard Oil Co.,* 597 F.Supp.2d 272, 283–84 (D.P.R.2009)). Thus the failure to remedy the environmental contamination, no matter when the contamination actually occurred, constitutes a continuous and ongoing violation.

Additionally, the Court affirms that the Magistrate correctly determined that

Plaintiff's allegations, taken together, sufficiently constitute an imminent and substantial endangerment to the public's health and the environment. While Esso makes light of Plaintiffs allegations that there "may be" an imminent and substantial endangerment, the First Circuit has found that the word "may" in subsection (a)(1)(B) was intended to make the provision expansive in order to give the courts the tools to "eliminate any risks posed by toxic waste." *Colón–Cabrera* at *14 (citing *Me. People's Alliance and Nat'l Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 287 (1st Cir.2006)). Furthermore, the Magistrate Judge aptly points out that Plaintiff's claim that there "may be" such endangerment comports with the statutory language of Section 6972(a)(1)(B).[2]

Plaintiffs aver that, since 1990, the presence of benzene, among other harmful contaminants, exceeded appropriate levels at the Site, thus contaminating the soil and groundwater. The existence of a potential harm to health and the environment is sufficient to state a claim under § 6972(a)(2)(A) where "there is a reasonable prospect that a serious, near-term threat to human health or the environment exists." *Mallinckrodt*, 471 F.3d at 279. Accordingly, the Court finds that Plaintiffs' averments, taken as true, suggest a substantial endangerment to the health of the Plaintiffs, the public and to the environment. A "plaintiff need not establish an incontrovertible imminent and substantial harm to health and the environment."

*Hernandez*, 597 F.Supp.2d at 287. Therefore, Esso's motion to dismiss on the ground that Plaintiff fails to allege an imminent and substantial endangerment to the health or to the environment is denied.

## V. CONCLUSION

For the reasons stated above, the Court hereby **ADOPTS IN TOTO** and **INCORPORATES HEREIN** Magistrate Judge McGiverin's *Report and Recommendation* (Docket No. 59). Accordingly, Defendant's Motion to Dismiss (Docket No. 49) is **DENIED**. Further, Defendant must file their answer within twenty (20) days of entry of the instant Opinion and Order, which is on or before **April 6, 2011.**[3]

**IT IS SO ORDERED.**

## *REPORT AND RECOMMENDATION*

BRUCE J. McGIVERIN, United States Magistrate Judge.

The instant case is a civil action brought by plaintiffs Renan, Carmen, and Guillermo Antonio Serracante, who together comprise plaintiff Estate of Antonio Serracante (collectively, "plaintiffs"), against defendant Esso Standard Oil (Puerto Rico) ("Esso" or "defendant") pursuant to the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901–6992k. (Docket No. 47). After the court granted in part defendant's motion to dismiss plaintiffs' original complaint for failure to

---

**2.** Section 6972(a)(1)(B) provides that any person may commence a cause of action:

against any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which **may present an imminent**

**and substantial endangerment to health or the environment[ ].**
(emphasis added).

**3.** The Court notes, and sincerely appreciates, the diligent and conscientious efforts of counsel representing both parties in the instant case. The Court is grateful for the well-reasoned filings from each party that have clearly and succinctly illuminated the salient issues.

properly plead standing (Docket Nos. 1, 12, 46), plaintiffs filed a verified amended complaint in April 2010. (Docket No. 47). Defendant renewed its motion to dismiss (Docket No. 49), plaintiffs opposed (Docket No. 52), and defendant replied. (Docket No. 57). The presiding district judge referred the matter to me for a report and recommendation. (Docket Nos. 56, 58). For the reasons that follow, I recommend that the motion to dismiss be **denied.**

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Renan, Carmen, and Guillermo Antonio Serracante inherited several parcels of real estate in Aibonito from their father, the late Don Antonio Serracante. One of the properties (the "Site") holds a now-defunct service station formerly run by defendant Esso (the "Station"). (Docket No. 47, ¶¶ 6–8). Since the Station was constructed in the early twentieth century, Esso (and/or its parent company, Exxon Mobil) has owned and/or operated the gasoline and diesel underground storage tanks ("USTs"), grease trap, and hydraulic lift located at the Site, over which Esso continues to maintain operational control. (*Id.*, ¶¶ 4–5, 18, 28).

During its time there, Esso has contaminated the Site, and the contamination has spread to adjacent properties also owned by plaintiffs.[1] (*Id.*, ¶¶ 8, 14, 17, 18). In 1990 and 1992, Esso discovered free hydrocarbon product in the soils and groundwater beneath the Station. (*Id.*, ¶ 28). In March 2003, the Puerto Rico Environmental Quality Board ("EQB") issued Esso a notification of violation of the Puerto Rico Underground Storage Tank Regulations

("USTRs").[2] EQB informed Esso of its duty to investigate the presence of free hydrocarbon product floating in the groundwater beneath the Station. (*Id.*, ¶ 29). In June 2003, Esso conducted a "Phase II Investigation" for the purpose of transferring the Station's USTs and servicing equipment to the land's owners. During July and August 2003, Esso removed the USTs, grease trap, and hydraulic lift from the Site. (*Id.*, ¶ 30).

In February 2004, EQB reviewed Esso's 1993 report on the removal and replacement of the USTs, Esso's 2003 soil sampling report, and Esso's 2003 report on the closure of the hydraulic lift and grease trap. EQB determined that the reports showed impermissible concentrations of benzene,[3] toluene, and total petroleum hydrocarbons at the Site. In particular, EQB concluded that the concentration of benzene in the soil and groundwater beneath the Site exceeded the level allowed by the EPA. Accordingly, EQB instructed Esso to delineate the vertical and horizontal contamination plume at the Site and to submit a remediation plan. (*Id.*, ¶¶ 31–32).

In March 2004, EQB reviewed Esso's report on the Site's soil conditions, including soil levels of diesel range organics and used oil. EQB again instructed Esso to submit a remediation plan and gave Esso a thirty-day deadline. In May 2004, Esso acknowledged EQB's order and informed EQB that it would not conduct a remediation at the Site, but would instead prepare and submit a Site Risk Assessment Report—a substitution EQB informed Esso in June 2005 was not acceptable. (*Id.*, ¶¶ 35–37). In October 2006, the EQB acknowledged receipt of Esso's Risk Assess-

---

1. The Municipal Government of Aibonito declared the Station a public nuisance in March 2006. (*Id.*, ¶ 38).

2. P.R. Admin. Reg. 4362, Rules 501–608.

3. Benzene, a gasoline constituent, is a hazardous substance regulated by the Environmental Protection Agency ("EPA") that can cause health problems. (*Id.*, ¶¶ 33–34).

ment Report and again informed Esso that it would not accept such a report in lieu of the required remediation plan. EQB denied Esso's request to be excused from compliance with EQB's investigation and remediation requirements. (*Id.*, ¶ 39). At this time, no vertical and horizontal delineation of soil and groundwater contamination has been performed. Since the soil and groundwater contamination has not been remediated, such contamination continues to spread from the Site. (*Id.*, ¶ 40).

Plaintiffs bring the instant action pursuant to RCRA's citizen suit provisions, 42 U.S.C. § 6972(a)(1)(A)-(B), seeking enforcement and/or injunctive relief and civil penalties against Esso. (*Id.*, ¶¶ 1, 45, 54, 55). The complaint alleges that Esso failed: to safely maintain the Station's USTs, pipelines, and servicing equipment; to prevent the gasoline and diesel leaks that occurred; to promptly discover the leaks and warn plaintiffs; and to clean up the spill. (*Id.*, ¶¶ 21–22, 41–45). Plaintiffs request that the court redress the environmental degradation of their properties and prevent the further spread of pollution by compelling Esso to fully investigate and remediate the contamination. Plaintiffs allege that due to the contamination and the alleged stigma of owning contaminated property, their properties' value has declined and plaintiffs cannot sell the land or use it for any productive business. (*Id.*, ¶¶ 12–13, 20, 24).

## STANDARD OF REVIEW

### I. Standard for Dismissal Under Rule 12(b)(1)

In moving to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a movant may challenge the court's jurisdiction in either of two ways. FED. R. CIV. P. 12(b)(1); *Telemundo of P.R., Inc. v. Union de Periodistas*, 2009 WL 3160940, at *2 (D.P.R.

Sept. 29, 2009). Under a sufficiency, or facial, challenge, the court takes the plaintiff's "jurisdictionally-significant facts as true" and "assess[es] whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir.2001); *see Torres–Negrón v. J & N Records, LLC*, 504 F.3d 151, 162–63 (1st Cir.2007). Under a factual challenge, a movant controverts the plaintiff's jurisdictional allegations when they are distinct from the case's merits. *Valentín*, 254 F.3d at 363. The court then addresses "the jurisdictional claim by resolving the [predicate] factual disputes." *Id.* Regardless of how jurisdiction is challenged, the party asserting jurisdiction bears the burden of showing its existence. *See Skwira v. U.S.*, 344 F.3d 64, 71 (1st Cir.2003); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

On a factual challenge, if the facts necessary to sustain subject matter jurisdiction do not implicate the merits of the plaintiff's cause of action, then the trial court may weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir.1997), *cited in Valentín*, 254 F.3d at 363 (internal citation and quotation omitted). No presumptive truthfulness attaches to plaintiff's allegations; the trial court may evaluate jurisdictional claims for itself. *Id.* at 1261, *cited in Valentín*, 254 F.3d at 363. In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings. *Valentín*, 254 F.3d at 363. A court may decide a Rule 12(b)(1) factual challenge without convening an evidentiary hearing; the key considerations are whether the parties have had a full and fair opportunity to present relevant facts and arguments, and whether

either party seasonably requested an evidentiary hearing. *Id.* at 364.

## II. Standard for Dismissal Under Rule 12(b)(6)

In order to survive a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "a plausible entitlement to relief." FED. R. CIV. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). However, a court should "accept well-pled factual allegations in the complaint as true and make all reasonable inferences in the plaintiff's favor." *Miss. Pub. Employees' Ret. Sys. v. Boston Scientific Corp.,* 523 F.3d 75, 85 (1st Cir.2008). The court may consider documents the authenticity of which are not disputed by the parties, documents central to the plaintiffs' claim, and documents sufficiently referred to in the complaint. *Curran v. Cousins,* 509 F.3d 36, 44 (1st Cir.2007) (internal citation omitted); *Beddall v. State St. Bank & Trust Co.,* 137 F.3d 12, 17 (1st Cir.1998).

While a complaint need not contain detailed factual allegations in order to withstand dismissal, a plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citation omitted). The court need not accept as true legal conclusions or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal,* 556 U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955) (internal alteration omitted); *Maldonado v. Fontanes,* 568 F.3d 263, 267 (1st Cir.2009). The complaint must allege enough factual content to nudge a claim across the line from conceivable to plausible. *Iqbal,* 129 S.Ct. at 1952 (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). The court's assessment of the pleadings is context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* at 1949. The plaintiff must show more than the "sheer possibility that a defendant has acted unlawfully." *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but has not shown, that the pleader is entitled to relief. *Id.* at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).

## DISCUSSION

### I. Subject Matter Jurisdiction

 As a preliminary matter, Esso alleges that the court lacks subject matter jurisdiction over plaintiffs' claims because the Commonwealth of Puerto Rico is currently prosecuting a civil RCRA action similar to plaintiffs' suit. (Docket Nos. 12, p. 4–8; 49, p. 4–5). Citizen suits under RCRA were meant to "supplement rather than to supplant governmental action." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 60, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987). Accordingly, a citizen suit brought under either 42 U.S.C. § 6972(a)(1)(A) or (a)(1)(B) may be barred if a state or federal agency is diligently prosecuting an enforcement action against the same alleged violator under those provisions. 42 U.S.C. § 6972(b)(1)(B), (b)(2)(C). The bar is jurisdictional. *See Esso Standard Oil Co. (P.R.) v. Rodríguez–Pérez,* 455 F.3d 1, 5–6 (1st Cir.2006).

 In a recent case that presented similar facts to the instant case, the First Circuit recognized that it has "never elaborated analytical principles for determining whether a civil action filed by a state un-

der RCRA is sufficiently similar to a subsequent citizen suit so as to preclude it." *Francisco Sánchez v. Esso Standard Oil Co. (P.R.)*, 572 F.3d 1, 10 (1st Cir.2009). The court noted the general principle that "[w]here the government has enforced against some, but not all of such violations alleged by the citizen, it has foregone its opportunity to foreclose the citizen from enforcing against the violations the government chose to ignore." *Id.* at 10 (internal citation and quotation omitted). In comparing the citizen suit before it with a similar civil action by the Commonwealth against defendants including Esso,[4] the *Sánchez* court considered (1) the contaminating compounds at issue, (2) the USTR violations alleged in each case, (3) the capacity in which the defendant was sued, (4) the scope of the lawsuit, including the number of defendants, the number of contaminants involved, and the scale of the alleged environmental impact, and (5) whether the requested remedies, if granted, would overlap so as to result in wasteful or duplicative enforcement efforts. The court concluded that the citizen suit was dissimilar enough not to be barred by the MTBE litigation. *Id.* at 12–14.

Esso argues that the same MTBE litigation bars plaintiffs' suit here. Esso characterizes the MTBE litigation as a suit "to address gasoline-related contamination from leaking USTs throughout Puerto Rico." Defendant argues that although the MTBE litigation focuses on MTBE in particular, "both MTBE and benzene [the compound at issue here] are gasoline constituents." Since both suits concern "alleged gasoline leaks from USTs" and seek identical remedies, namely, "the repair, closure, and/or decontamination of the allegedly leaking USTs," Esso argues, the court should find that the MTBE litigation bars plaintiffs' suit. (Docket No. 49, p. 2, 4–5). Esso also contends that the remedies in the two cases overlap despite the differing capacities in which Esso is sued.[5] (Docket No. 57, p. 4). Plaintiffs respond that, as in *Sánchez*, the MTBE litigation does not bar their suit because their claims involve different contaminants, different USTR provisions, and different requested relief. (Docket No. 52, p. 13–15).

Plaintiffs have the better of the argument: the resemblance between the facts at bar and the facts in *Sánchez* leads me to the same result as that reached by the First Circuit. Plaintiffs' suit against Esso alleges contamination in the soil and groundwater aquifer below the Station by benzene and toluene [6] due to leaks or spills of gasoline, diesel, and used oil. (Docket No. 47, ¶¶ 31, 32, 50, 51). The *Sánchez*

---

**4.** The Commonwealth's lawsuit is part of a consolidated multi-district litigation ("MDL") pertaining to groundwater contamination from the defendants' use of the gasoline additive methyl tertiary butyl ether ("MTBE"), in which the Commonwealth asserts claims under, *inter alia*, RCRA and the USTRs. *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation*, MDL No. 1358(SAS) (hereinafter "the MTBE litigation").

**5.** Esso additionally argues that the amended complaint's vague allegation of "contamination" in the groundwater below the Station, plus its mention of EPA regulations for benzene levels in groundwater, implicate the USTR provisions applicable to "the waters of the Commonwealth," which are the subject of the MTBE litigation, so plaintiffs' suit is barred. (Docket No. 57, p. 3–4). This argument lacks merit. Allegations of groundwater contamination beneath a single private property cannot be stretched to encompass the entirety of the island's water resources. *Sánchez*, 572 F.3d at 13 (distinguishing Commonwealth's suit to protect "waters of the Commonwealth" generally from "the potential contamination and clean-up of one particular property" in plaintiffs' suit).

**6.** While the amended complaint mentions both benzene and toluene contamination, plaintiffs' claims appear chiefly to concern benzene. (Docket No. 47, ¶¶ 31–34).

court drew a distinction between MTBE on the one hand and benzene and toluene on the other, since "even though both compounds are components of gasoline, the areas affected by MTBE and [benzene and toluene] contamination could potentially be different and/or require different remedial measures in case of a leak from a UST." 572 F.3d at 12.

Furthermore, plaintiffs allege violations of USTR Rules 501, 503, 601, 602(A) and (B), 603(A), 604(A) and (C), and 606(A)(1)(3) against Esso in its capacity as "the owners and/or operators" of the USTs at the Station. (Docket No. 47, ¶¶ 4, 44). The MTBE litigation, by contrast, alleges violations of Rule 1102(A), (B), and (D) by Esso in its capacity as a "refiner/supplier" and does not allege that Esso is an "owner/operator" of the USTs involved, another difference the *Sánchez* court found significant. *Sánchez*, 572 F.3d at 12–13. In addition, as in *Sánchez*, plaintiffs here are suing a single defendant over alleged contamination at a single site (comprising several contiguous properties owned by plaintiffs), whereas the MTBE litigation is "a suit against dozens of defendants seeking to remedy the harm caused throughout the Commonwealth" by MTBE. *Id.* at 13.

As to whether the requested remedies overlap, the amended complaint requests civil penalties, fees, and costs as well as injunctive relief ordering reports, investigation, and abatement of the contamination at the Station and prevention of further contamination. (Docket No. 47, ¶¶ 45, 54, 55). Esso alleges that the MTBE litigation and the instant suit both seek "the repair, closure, and/or decontamination of the allegedly leaking USTs." (Docket No. 49, p. 5). The court again finds persuasive the *Sánchez* court's reasoning: if the remedies in the two actions are not identical, then the MTBE litigation is no bar, and if they are identical, "then whichever action

is resolved first will obviate the need for the performance of that remedy in the other action." Accordingly, "there is no need, at this stage, to 'short circuit' this suit on jurisdictional grounds." *Sánchez*, 572 F.3d at 13–14. Likewise here, any remedy ordered in one suit can be taken into account in the other action at the appropriate time, thereby preventing the waste of enforcement resources.

In short, I find that while some points of similarity do exist, the instant suit does not sufficiently resemble the MTBE litigation as to deprive this court of jurisdiction. I turn, then, to defendant's Rule 12(b)(6) challenges to plaintiffs' claims.

## II. Rule 12(b)(6) Challenge

Under 42 U.S.C. § 6972, a RCRA citizen suit plaintiff has two avenues to pursue relief:

> [A]ny person may commence a civil action on his own behalf-
>
> (1)(A) against any person ... who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to [RCRA]; or
>
> (1)(B) against any person ... who has contributed to or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(A)-(B). Plaintiffs allege a cause of action under each of these two scenarios. Plaintiffs' first cause of action, pursuant to section 6972(a)(1)(A) ("subsection (a)(1)(A)"), claims that Esso is in violation of Puerto Rico and federal regulations requiring reporting, investigation, abatement, and remediation of releases of petroleum products from USTs under

Subchapter IX of RCRA. (Docket No. 47, ¶¶ 21–22, 41–45). Plaintiffs' other claim, under section 6972(a)(1)(B) ("subsection (a)(1)(B)"), alleges that Esso improperly stored and disposed of hazardous waste at the Site in violation of Subchapter III of RCRA.[7] (*Id.*, ¶¶ 20, 46–55). Defendants contend that both claims fall short of section 6972(a)'s requirements.

## A. "Ongoing Violation" Requirement

■ Esso argues that plaintiffs' first claim should be dismissed because it is based entirely on alleged past violations. (Docket Nos. 12, p. 9–10; 49, p. 3). Subsection (a)(1)(A) allows a court to grant relief to address only an ongoing RCRA violation. *Sánchez*, 572 F.3d at 7. Under Subchapter IX of RCRA, which regulates USTs, the EPA has promulgated regulations requiring UST owners and operators to notify environmental regulators of releases from USTs, investigate such releases, and take remedial action to address them. *See generally* 40 C.F.R. § 280. Pursuant to a delegation of authority by the EPA, EQB administers the UST program in Puerto Rico under the USTRs. Acting as the functional equivalent of the EPA's regulations, the USTRs "impose a strict regime of monitoring, reporting, and remediation requirements." *Sánchez*, 572 F.3d at 6–7.

Plaintiffs allege that by failing, *inter alia*, to submit a remediation plan to EQB as required, to clean up the leaked petroleum products that allegedly continue to spread and contaminate the soil and groundwater, or to delineate the extent of the contamination, Esso is in continuous violation of several USTRs governing leak reporting, investigation, abatement, and remediation. Defendant argues that since it is undisputed that Esso removed the USTs from the Station in 2003 and there is no allegation that Esso currently owns or operates any USTs at the Station, these alleged violations should be considered past and thus not actionable under subsection (a)(1)(A).

Defendant's argument is unavailing. After reviewing numerous decisions from other courts addressing such an argument, this court recently found that "failure to take corrective action and comply with regulations in connection to a previous [UST] spill can constitute a continuous violation under § 6972(a)(1)(A)." *Marrero Hernandez v. Esso Standard Oil Co. (P.R.)*, 597 F.Supp.2d 272, 283–84 (D.P.R. 2009) (collecting cases). "[I]t is enough to constitute a continuous violation under RCRA that improperly discharged hazardous wastes 'continue to exist unremediated' at the contamination site." *Id.* at 284 (quoting *California v. M & P Invs.*, 308 F.Supp.2d 1137, 1146–48 (E.D.Cal.2003)). Since plaintiffs have alleged that Esso presently continues to refuse to remediate the contamination at the Site, they have sufficiently alleged an ongoing violation of Subchapter IX under subsection (a)(1)(A). Accordingly, I recommend that the court **deny** defendant's motion to dismiss this claim.

## B. "Imminent and Substantial Endangerment" Requirement

■ Finally, Esso argues for dismissal of plaintiffs' other cause of action due to the amended complaint's failure to allege any activities that would constitute an "imminent and substantial endangerment" for purposes of subsection (a)(1)(13). (Docket No. 49, p. 3–4). A suit under subsection (a)(1)(13) may be predicated on either past or present regulated conduct

---

7. Subchapter III of RCRA regulates hazardous waste management, *see* 42 U.S.C. §§ 6921–6939f, while Subchapter IX regulates USTs. *See* 42 U.S.C. §§ 6991–6991m.

regarding solid or hazardous waste that presents an "imminent and substantial endangerment to health or the environment." *Sánchez*, 572 F.3d at 7 (citations omitted). An "imminent and substantial endangerment" exists only when "a reasonable prospect that a serious, near-term threat to human health or the environment exists." *Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc.*, 471 F.3d 277, 279 (1st Cir.2006). The "mere presence" of contaminants in the environment alone is not sufficient, *id.* at 282, nor is exceeding a regulatory standard for contamination. *Orange Env't, Inc. v. Cnty. of Orange*, 860 F.Supp. 1003, 1028–29 (S.D.N.Y.1994). There is no imminent and substantial endangerment "if the risk of harm is remote in time, speculative in nature, and de minimis in degree." *Smith v. Potter*, 187 F.Supp.2d 93, 98 (S.D.N.Y. 2001) (citation and quotation omitted).

Plaintiffs allege that Esso's discharge of petroleum products at the Site polluted plaintiffs' properties and "the environment ... in a general sense," and that EQB determined that the Site's benzene, toluene, and total petroleum hydrocarbons levels were above the allowed levels. (Docket No. 47, ¶¶ 23, 31, 32). Plaintiffs also allege that "the particular concentration of pollutants ... poses an imminent or potential threat to plaintiffs' health," that "Esso's action or omission may present a danger to human health and the environment," and that "imminent and substantial endangerment to health or to the environment may be caused by the continuous contamination of the groundwater aquifer below the service station" since at least the last ten years. (*Id.*, ¶¶ 19, 48, 53).

Defendant argues that plaintiffs' allegations are too conclusory to make out a claim for imminent and substantial endangerment. While defendant harps on plaintiffs' claim that such endangerment "*may*

*be*" caused by groundwater contamination, this allegation merely tracks the statutory language: it is reasonable possibility, rather than certainty, of harm that the statute requires. *Mallinckrodt*, 471 F.3d at 287–88. As to whether "the threat is near-term and involves potentially serious harm," *id.* at 296, plaintiffs have alleged contamination of the soil and groundwater since at least 1990 by impermissible levels of benzene, a regulated chemical that plaintiffs allege can cause health problems. Additionally, plaintiffs have alleged that the municipality of Aibonito declared the Station a public nuisance more than four years ago, and that the soil and groundwater pollution is still expanding from the Site into adjacent properties at this time. Taken together, these allegations sufficiently claim that benzene contamination spreading from the Site poses a near-term (indeed, already extant) and significant threat to the public's health and the environment. Accordingly, I recommend that the court **deny** defendant's motion to dismiss plaintiffs' second claim.

## CONCLUSION

For the reasons stated above, I recommend that defendant's motion to dismiss be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within **five (5) business days** of its receipt. Additionally, the court has **set aside** the three-day term provided by Local Rule 5(e). (Docket No. 56). Failure to file timely and specific objections to the report and recommendation waives the right to appellate review. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150–151 (1st Cir.1994); *United States v.*

*Valencia–Copete,* 792 F.2d 4, 6 (1st Cir. 1986).

**IT IS SO RECOMMENDED.**